*70 OPINION.
Littleton:
Petitioner alleges error on the part of the Commissioner in refusing to include in invested capital for 1919, any value for good will, subject to the limitations applicable to intangibles imposed by section 326(a) (4) of the Revenue Act of 1918. It contends *71 that the good will was acquired from the predecessor partnership of Landesman, Hirschheimer & Co., in 1897, when it succeeded to the partnership business; that such good will was bona fide paid in by the members of the predecessor partnership, for shares of its capital stock; that the actual cash value of such good will, at the time paid in, was not less than $304,000; and that it is entitled to include this good will in invested capital, subject to the limitations applicable to intangibles. The Commissioner does not deny that when petitioner succeeded to the business of the predecessor partnership, it came into the ownership of any good will which may have attached to the business. He contends, however, that no stock was issued by the petitioner specifically for good will, and, that being the case, petitioner is not entitled to include such good will in invested capital, because section 326 (a) (4) of the Bevenue Act of 1918 permits the inclusion of only such intangibles as have been bona fide paid in for shares of stock.
The Commissioner places his chief reliance in this controversy upon the express language of the resolution adopted at the meeting of petitioner’s board of directors held on December 7, 1896. This resolution provided that the shares of stock issued to Landesman, Hirsch-heimer, and Levi should be paid for “ at par by delivering to the Company on or before January 2, 1897, the stock of goods of the firm of Landesman, Hirschheimer & Co., of Cleveland, Ohio, a partnership composed of said Landesman, Hirschheimer and Levi (engaged in the business which this corporation is organized to carry on) at cost price of said goods, as shown by an inventory to be taken between this date and January 2, 1897; that any balance that may remain unpaid on their said subscriptions, after the inventory price of said stock of goods has been credited thereon, shall be paid by said Landesman, Hirschheimer and Levi in cash on said January 2, 1897.” The manner of payment for the capital stock issued to the members of the predecessor partnership, required by this resolution, the Commissioner contends precludes any possibility of conclusion that good will was paid in for shares of stock.
Whatever may be the answer to this controversy, we deem unimportant at this time. The fact is the petitioner has failed to prove the premise of its contention — the existence of any good will at the date it took over the assets and business. When we found as a fact that the business to which petitioner succeeded was the manufacturing and selling of ladies’ wearing apparel, we stated substantially all that had been given to us as to the history of the business. No evidence whatever was introduced as to the character, quality, or standard of goods which were being produced by the business, the reputation of such products in the markets in which they were being *72 disposed of, the extent of development of markets for its products, the standing of the business in the industry, its reputation for fair dealing, and other factors of importance in determining the existence and value of good will. Evidence was introduced as to the earnings of the business before and after it was taken over by the petitioner. It is true that these earnings are far in excess of a reasonable return on the average net tangible assets employed in the business. Nevertheless we can not assume from that situation the existence of any good will. Excess earnings may be attributable to many other factors. The petitioner, for aught we know, may have enjoyed a virtual monopoly in the marts in which it disposed of its products. Its large earnings may have resulted from an extortionate policy of securing for its products whatever the traffic would bear. The meagre evidence afforded by the record in this case offers no basis for a conclusion that the petitioner acquired valuable good will from its predecessor. Such being the case we shall not disturb the Commissioner’s action in excluding good will from invested capital for 1919.
The petitioner complains of the inconsistent manner in which the Commissioner has dealt with cash discounts, as deductions from income, for 1919 and 1923. For 1919 the Commissioner allowed as a deduction the addition to the reserve for cash discounts, which was $3,627.78 less than the actual discounts allowed to customers during the year. For 1923 he allowed as a deduction the actual discounts allowed during the year which were $3,840.12 less than the addition to the reserve for cash discounts made in that year. Petitioner contends that the Commissioner can not be right in both instances. It concedes that the Commissioner’s determination in respect of cash discounts for 1923 is correct, but contends that his determination for 1919 is wrong. We think that petitioner’s contentions in this matter are correct. They are supported by the decisions of this Board in Jackson Casket & Manufacturing Co., 7 B. T. A. 1190, and the several cases cited therein. Accordingly, we hold that the net income determined by the Commissioner in the deficiency notice for 1919 should be reduced by $3,627.78, and we approve the Commissioner’s determination as to the deduction for cash discounts for 1923.
The next assignment of error is that the Commissioner failed to include in invested capital for 1919 the reserve for cash discounts at the beginning of the year, amounting to $25,244.79. We have no evidence before us which establishes error on the part of the Commissioner in this respect. Ordinarily true reserves, the additions to which are not deductible from income for income-tax purposes, are regarded as a part of earned surplus and included in invested capital as such. But we have no evidence before us which shows that the *73 reserve of which petitioner speaks belongs to that class of reserves which are in reality merely an appropriation, or a part of ihe earned surplus. We can not assume the nature of a book account merely from its nomenclature. Even though we have held that the Commissioner erred in allowing the deduction of the addition to the reserve for cash discounts made in 1919, we are not necessarily led to the position of having to conclude that the reserve for cash discounts at the beginning of the year constituted a part of petitioner’s earned surplus. Without knowing from what source the reserve at the beginning of the year was set up, we can not say that it constitutes a part of the earned surplus to be properly included in invested capital.
Finally, the petitioner alleges that the Commissioner erred in refusing to compute its profits-tax liability for 1919 under the provisions of sections 327 and 328 of the Eevenue Act of 1918. Petitioner contends that it acquired a mixed aggregate of tangible and intangible properties with shares of its capital stock, the respective values of which properties the Commissioner is unable to ascertain satisfactorily and, therefore, it is within the provisions of section 327 (c) of the Act. The answer to that contention is that petitioner has failed to prove, as we have previously stated, that it acquired any valuable good will from its predecessor with shares of stock. If it acquired any intangibles from any other source, with shares of stock, there is no proof thereof in the record. The petitioner further contends that the exclusion from invested capital of all good will value in excess of the statutory limitation creates such an abnormality affecting its capital as to bring it within the provisions of section 327 (d) of the Act. The answer to this contention is the same as to the preceding one. Two other conditions are set out in the brief as constituting such abnormalities affecting capital and income as to bring the petitioner within the provisions of section 327 (d). They are as follows:
First, the fact that the company’s capital stock was closely held, all of the stockholders excepting one being actively employed in the company’s business and their shares being tied up under an arrangement whereby, upon their leaving the company either through voluntary cessation of employment or by death, their shares were subject to purchase by the Board of Directors of the company for the benefit of other stockholders, and,
Second, the fact that the company, which for the year 1919 had an invested capital in excess of $1,100,000.00 for tangibles only, much of which had been accumulated prior to March 3, 1917, through failure normally to capitalize its surplus and issue stock therefor prior to March 3, 1917, was subject to the 25 per cent limitation imposed by Section 326 computed on only $325,000.00 of capital stock outstanding on March 3, 1917; had the company normally capitalized its surplus prior to March 3, 1917, the amount of Good Will which might be included in invested capital under Section 326 would have been much in excess of the figure of $81,250.00.
*74 It is argued that the first of these conditions resulted in the production of income wholly disproportionate to the actual investment. This is merely theorizing. It is true that in 1919 all but one stockholder were actively engaged in some capacity in the business. It is to be presumed, however, in the absence of evidence to the contrary, that they were compensated in proportion to the value of the services which they rendered. We do not know what the stockholder’s investment in the business is. It has been stipulated that the Commissioner determined the invested capital to be $1,129,554.9b. The deficiency notice shows a net income of $366,388.33, a return of approximately 30 per cent on invested capital. If this income is abnormally high and disproportionate to the investment, in a business of the character in which petitioner is engaged, such facts, and the causes thereof, have not been established by proper proof.
As to the second condition, we must hold that it presents no abnormality affecting capital, because the petitioner has failed to establish its right to include any good will in invested capital.

Judgment will be entered wnder Rule 50.